IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACEY THOMPSON, | No. C 11-01670 EDL |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| PATRICK R. DONAHOE, | |
| Defendant. | |

Pending before the Court is Defendant's Motion for Summary Judgment. For reasons set forth below, the Court GRANTS this motion.

**I.   Factual Background**

At all times relevant to this lawsuit, Plaintiff Tracey Thompson was a part-time regular mail handler for the United States Postal Service (USPS) at the Napoleon Street Annex in San Francisco. (Reding Decl. Ex. A, Pl.'s Dep. at 30, 58; Pl.'s Decl. ¶ 3.) Plaintiff joined the Napoleon Street Annex as a mail handler in November 2007, after settling a previous grievance with the USPS. (Pl.'s Dep. at 30, 92-93; Pl.'s Decl. ¶ 3.) Plaintiff's employment with the USPS was facilitated by the California Department of Rehabilitation. (Pl.'s Dep. at 93-94; Reding Decl. Ex. 9 at 147, 149.)

When Plaintiff began at the Napoleon Street Annex, her supervisor was Roland Maples. (Pl.'s Decl. at 57.) Maples was a customer service supervisor at the Napoleon Street Annex until August 2010, when he was transferred to a different facility. (Maples Decl. ¶¶ 1-2.) Plaintiff subsequently was transferred from the Napoleon Street Annex to the Evans Street Facility, where

she had a number of supervisors, none of whom were Maples. (Pl.'s Dep. at 62.) In October 2011, Plaintiff took a leave of absence for a medical procedure. (Pl.'s Dep. at 271.) Since that time Plaintiff has been on leave, and the USPS received a notice of resignation from Plaintiff on April 14, 2013. (Reding Decl. Ex. B.)

During Plaintiff's employment with the USPS, she filed a number of informal administrative claims and formal administrative complaints alleging discrimination, starting in August 2007.[1] She settled her first claim and filed additional claims in November 2008, June 2009, February 2010, June 2010, August 2010, and April 2011. (Def.'s Mot. Summ. J. at 5-8 (citing Patterson Decl. and exhibits filed in connection with Def.'s Mot. Dismiss, Dkt. 44).) These claims concerned many of the incidents later alleged in this action.

## II.  Procedural History

On April 6, 2011, Plaintiff, proceeding pro se, filed a complaint against Defendant Patrick R. Donahoe, Postmaster General of the USPS, alleging that the USPS discriminated against her on the basis of race, sex, national origin, and disability. Plaintiff also alleged that Defendant retaliated against her for filing previous EEO claims. Defendant moved to dismiss the complaint for lack of jurisdiction and failure to state a claim. The Court granted Defendant's motion to dismiss but granted Plaintiff leave to amend her complaint. (Dkt. 32.)

Plaintiff, now represented by counsel, filed an amended complaint on January 12, 2012. In this first amended complaint, Plaintiff brought claims for: (1) sexual harassment and hostile work environment in violation of Title VII of the Civil Rights Act; (2) retaliation in violation of Title VII; (3) disability discrimination in violation of the Americans with Disabilities Act; and (4) violation of the "No Fear" Act. (Dkt. 41.) Defendant again moved to dismiss. Plaintiff opposed dismissal of the sexual harassment claim and sought leave to amend the complaint to add allegations regarding the other claims. The Court denied the motion to dismiss the sexual harassment claim, dismissed the No Fear Act claim with prejudice, and dismissed the discrimination and retaliation claims with leave to

---

[1] Federal regulations distinguish between informal administrative claims and formal administrative complaints. 29 C.F.R. § 1614.105. For consistency and to avoid confusion with the pleadings in this case, the Court refers to both informal administrative claims and formal administrative complaints as "claims."

2

amend. (Dkt. 51.)

Plaintiff then filed a second amended complaint ("SAC") containing three claims. (Dkt. 52.) The first claim is for hostile work environment in violation of Title VII. Plaintiff alleges that her supervisor, Ronald Maples, subjected her to "a pattern of sexual harassment by creating an ongoing and continuously hostile work environment" by hugging kissing, grabbing, and otherwise touching a female co-worker "in a sexually explicit manner in front of Plaintiff." (SAC ¶ 19.) Plaintiff further alleges that Maples gave that co-worker preferential treatment. (Id. ¶¶ 20-22.)

The second claim in the SAC is for retaliation in violation of Title VII. Plaintiff alleges that she filed a number of Equal Employment Opportunity ("EEO") claims, that her supervisors knew of the settlement agreement to rehire Plaintiff in 2007 and knew or should have known of the EEO claims, and that "[b]ased on Plaintiff engaging in the aforementioned protected activity, Defendant USPS and specifically her supervisor, Roland Maples has retaliated against Plaintiff in the following ways . . . ." (SAC ¶ 27.) Plaintiff then lists a number of actions allegedly taken against her, some of which Defendant now argues Plaintiff failed to exhaust.

Plaintiff's third claim is for disability discrimination in violation of the Rehabilitation Act of 1973. Plaintiff alleges that she has a "specific learning disability" and record of that disability, that USPS employees, including Roland Maples, knew of Plaintiff's disability, and that Defendant and his employees, including Roland Maples, discriminated against Plaintiff based on her disability. (SAC ¶¶ 28, 37-39). Much of the allegedly discriminatory conduct overlaps with the alleged acts of retaliation, and Defendant argues that Plaintiff failed to exhaust some of them.

In the pending motion for summary judgment, Defendant seeks judgment in his favor on all claims of the SAC. (Dkt. 72.) Defendant first argues that only a few of the alleged retaliatory and discriminatory claims have been administratively exhausted. Defendant also contends that Plaintiff cannot establish sexual harassment, disability discrimination, or retaliation claims. In response, Plaintiff argues that there are disputed issues of material fact that preclude summary judgment.

**III.    Discussion**

    A.    Legal Standard

Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on

3

file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party "may not rely merely on allegations or denials in its own pleading"; rather, it must set forth "specific facts showing a genuine issue for trial." See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250. If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

A party asserting that a fact is genuinely disputed must support the assertion by citing specific admissible evidence, including depositions, documents, or declarations. Fed. R. Civ. P. 56(c)(1)(A); FTC v. Publishing Clearinghouse, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to crate a genuine issue of material fact."). Speculation does not suffice to create a genuine factual dispute on summary judgment. Nelson v. Pima Community Coll., 83 F.3d 1075 (9th Cir. 1996). Any declaration used to support or oppose

4

a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

A court need only consider only the materials cited by the parties. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2000) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."). If a party does not properly support an assertion of fact, a court may give a party an opportunity to address the fact or consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e).

Although a court does not make credibility determinations on summary judgment, "the general rule is that 'a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'" Nelson v. City of Davis, 571 F.3d 924, 927 (9th Cir. 2009) (quoting Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991)). The rationale for this "sham affidavit" rule is that "a party ought not to be allowed to manufacture a bogus dispute with himself to defeat summary judgment." Nelson, 571 F.3d at 928. This rule does not, however, preclude a non-moving party from explaining or clarifying prior testimony. Id. Similarly, an affidavit filed in opposition to summary judgment should not be excluded due to minor inconsistencies resulting from an honest discrepancy, a mistake, or newly discovered evidence. Id. Rather, before an affidavit or declaration is disregarded, a court must make a factual determination that it was actually a sham, i.e., that it was "manufactured for the purpose of avoiding summary judgment by creating a genuine issue of material fact." Id. at 929 n.2.

B.     Exhaustion and Claims at Issue

Defendant's first argument is that Plaintiff has failed to administratively exhaust many of the claims raised in the SAC. A plaintiff must exhaust her administrative remedies for a court to have subject matter jurisdiction over her Title VII claims. Surrell v. California Water Service Co., 518 F.3d 1097, 1103-1104 (9th Cir. 2008); B.K.B. v. Maui Police Dep't,

5

276 F.3d 1091, 1099 (9th Cir. 2002). Claims brought under the Rehabilitation Act must also be exhausted. Bullock v. Berrien, 688 F.3d 613, 616 (9th Cir. 2012). To exhaust her administrative remedies, a federal employee must first file an informal claim that triggers counseling by an EEO counselor. Id. If no resolution is achieved, the employee must then file a formal EEO claim. Id. "The employee may file a civil action in federal district court within 90 days of receiving notice of final agency action on the employee's formal complaint by the ALJ, or after 180 days from the filing of the formal complaint if no final action has been taken by that time." Id. Claims that are not exhausted are barred in federal court. See, e.g., Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch, 572 F.3d 1039, 1043 (9th Cir. 2009); Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 383 (9th Cir. 1997).

### 1.    Sexual Harassment

Defendant argues that the only actionable sexual harassment is that which allegedly occurred between March 2009 and August 2010. (Dkt. 72 at 13.) Although the SAC alleges sexual harassment beginning in 2007, Defendant asserts that the first time Plaintiff arguably reported sexual harassment was in an affidavit filed in connection with her June 15, 2009 EEO claim. Defendant argues that "[t]o have been timely, Plaintiff should have made her initial contact with an EEO Counselor within 45 days of the alleged harassment. . . . [and] the only claim of sexual harassment that survives is that which may have occurred between March 2009 and August 2010, when Mr. Maples was transferred from the Napoleon Street Annex." (Id.) Plaintiff does not respond to this argument.

The Court agrees with Defendant. A plaintiff must initiate contact with an EEO counselor within 45 days of the harassing conduct. 29 C.F.R. § 1614.105(a)(1). The counselor must inform a plaintiff of the right to file a formal EEO claim no later than 30 days after being contacted. Id. § 105(d). A plaintiff has 15 days from receipt of this notice to file a formal claim with the EEO office. Id. §§ 105(e), 106(b). For an EEO claim to be properly exhausted, therefore, the conduct at issue must have occurred no earlier than 90 days prior to the filing of a formal EEO claim. Assuming that Plaintiff's sexual harassment

6

claim is related to acts set forth in her June 17, 2009 formal EEO claim, the earliest this conduct could have occurred and properly been exhausted is March 19, 2009.

Defendant is also correct regarding the August 2010 cutoff for sexual harassment liability. The only person whom Plaintiff accuses of sexual harassment is Maples. (Pl.'s Opp. at 3, Dkt. 75.) It is undisputed that Maples left the Napoleon Street Annex in August 2010. (Maples Decl. ¶ 2.) Plaintiff has not produced any evidence that Maples engaged in harassment that made her work environment hostile after leaving the Napoleon Street Annex. The only actionable harassment, then, is that which occurred, if any, between March 2009 and August 2010.

### 2. Retaliation and Discrimination

Defendant also argues that not all of Plaintiff's retaliation and disability claims have been exhausted. Although the burden is on Plaintiff to prove that her claims were exhausted, she does not address Defendant's exhaustion argument. The Court makes the following findings regarding exhaustion.

#### a. Allegations Not Exhausted and Not Before the Court

- Maples issued Plaintiff warning letters and threatened to terminate her for attendance problems even though she presented him with doctor's notes. (SAC ¶ 27e, 39e.). The EEO office determined that Plaintiff did not timely contact an EEO counselor regarding this claim. (Patterson Decl. Exs. H, J., Dkt. 44-2.)
- Maples and USPS employees teased and made fun of Plaintiff when she asked for union representation. (SAC ¶ 27g.) Plaintiff has not pointed to any evidence that this claim was exhausted.
- Maples isolated Plaintiff from other employees and refused to talk to her, and he sent other employees to speak to her on his behalf. (SAC ¶ 27h, 39g.) Plaintiff has not pointed to any evidence that this claim was exhausted.
- A USPS employee wrote Plaintiff up and gave her a warning and an AWOL for calling in late when other co-workers called in late and were not given a warning or an AWOL. (SAC ¶ 27i.) Plaintiff received a letter notifying here that she had 15

7

days to file a formal EEO claim, but there is no evidence that she did so. (Reding Decl. Ex. 12.)

- Maples denied Plaintiff an opportunity to bid for a higher paying job while other workers were granted the opportunity. (SAC ¶ 39b.) Plaintiff has not pointed to any evidence that this claim was exhausted.

- Defendant failed to engage in an interactive process and offer Plaintiff a reasonable accommodation. According to Plaintiff, when she told Maples that she could not remember job instructions due to her disability, Maples ridiculed and humiliated Plaintiff by telling her that she was being "defiant," "using selective memory," and that that was "unacceptable behavior." Maples allegedly stated "if others remember, you should to [*sic*]." (SAC ¶ 39d.) There is no evidence that Plaintiff raised this in an EEO claim.

     b.  Allegations Exhausted and Properly before the Court

- Maples denied Plaintiff training for operational licenses such as a forklift and jitney when other employees with her job classification received said training. (SAC ¶ 27a, 39a.) This claim was presented to the EEO office in a letter and was deemed "like or related to" matters raised in her June 2009 EEO claim. (Patterson Decl. Exs. U, V.)

- Maples denied Plaintiff a jitney license for over a year even though co-workers who started around the same time received jitney licenses within two months of starting. (SAC ¶ 27b, 39c.) This claim was presented to the EEO office in a letter and was deemed "like or related to" matters raised in the June 2009 EEO claim. (Patterson Decl. Exs. U, V.)

- Maples gave Plaintiff twice as much work as others and laughed at Plaintiff when she complained. (SAC ¶ 27c.) This conduct was raised in a November 2008 EEO claim, and Defendant concedes that it was exhausted.

- Maples issued Plaintiff warning letters and allegedly threatened to terminate Plaintiff when she was unable to remember to follow instructions regarding

8

placement of a time card, even though her co-workers were not reprimanded for the same error. (SAC ¶ 27d.) This was raised in a June 2009 EEO claim.

- A USPS employee gave Plaintiff a notice of suspension for nonscheduled absences without providing her with union representation. (SAC ¶ 27g.) This was raised in a June 2010 EEO claim.

- Maples denied Plaintiff a transfer to another station although there was a vacancy. (SAC ¶ 27j, 39h.) This was raised in a November 2008 claim and was addressed by an Administrative Law Judge. (Patterson Decl. Exs. C, E.)

### C. Hostile Work Environment Sexual Harassment (Title VII)

Defendant moves for summary judgment on Plaintiff's sexual harassment claims. Defendant argues that Plaintiff cannot make out a prima facie case. Plaintiff contends that there are issues of material fact that preclude summary judgment. The only evidence Plaintiff puts forth is her declaration in opposition to Defendant's motion for summary judgment. Because the conduct that Plaintiff describes is not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment, Plaintiff has failed to raise a triable issue of sexual harassment.

To state a claim under Title VII for hostile work environment sexual harassment, an employee "must show that: (1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." Porter v. California Dept. of Corrections, 419 F.3d 885, 892 (9th Cir. 2005) (citation omitted). The "severe or pervasive" element has both objective and subjective components, and courts consider "not only the feelings of the actual victim, but also 'assume the perspective of the reasonable victim.'" EEOC v. Prospect Airport Servs., 621 F.3d 991, 998 (9th Cir. 2010) (quoting Brooks v. City of San Mateo, 229 F.3d 917, 924 (9th Cir. 2000)).

Title VII is not a civility code. Prospect Airport, 621 F.3d at 998 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). Courts must consider all the

9

1 circumstances, which include the frequency of the conduct, its severity, whether it is
2 physically threatening or humiliating, and whether it unreasonably interferes with an
3 employee's work performance.  A romantic relationship between co-workers, standing
4 alone, does not create a harassing environment.  Knadler v. Furth, Case No. C 04-01220
5 CRB, 2005 U.S. Dist. LEXIS 21278, at *16-*17 (N.D. Cal. Sept. 9, 2005).  A plaintiff may
6 be able to prove a hostile work environment, however, if the plaintiff establishes that
7 "employment opportunities were extended to less qualified female co-workers who
8 responded to sexual overtures from work supervisors" or that the plaintiff "was denied any
9 benefits because she spurned a supervisor's sexual advances."  Candelore v. Clark Cty.
10 Sanitation Dist., 975 F.2d 588, 590 (9th Cir. 1992).  Similarly, a situation involving
11 "widespread sexual favoritism" characterized by public fondling and the flaunting of
12 relationships could constitute a hostile work environment.  Id. at *20-*21 (citing Miller v.
13 Dep't of Corrections, 115 P.3d 77 (Cal. 2005)).[2]

14 Here, Plaintiff has not established that any sexual conduct, coupled with favoritism,
15 was severe or pervasive enough to alter the conditions of Plaintiff's employment or create
16 an abusive working environment.  Plaintiff relies solely on her declaration, which only
17 states conclusorily that "[d]uring my time at the Napoleon Station, I was constantly harassed
18 by my immediate supervisor, Roland Maples" and that she wanted jitney and forklift
19 training, "but I was blocked by Maples from getting them, while others like me got the jobs
20 and bonus."  (Pl.'s Decl. ¶¶ 4-5.)

21 At her deposition, Plaintiff testified that Maples touched Judy's hair and hugged her.
22 (Pl.'s Dep. at 69-70).  She testified that she saw this every other day or a couple of times a
23 week.  (Id. at 70-71.)  Plaintiff said that she could "just tell" that the hugs Maples gave Judy
24 were a "different from a hug."  (Id. at 78.)  Plaintiff did not know whether Maples and Judy
25 were having a relationship.  (Id.)  Plaintiff further testified that Maples was always talking

---

[2] Many courts have rejected the "paramour" theory of gender discrimination – "the notion that a supervisor's relationship with a co-worker coupled with favoritism can constitute discrimination" – because "when an employer discriminates in favor of a paramour, such an action is not sex-based discrimination, as the favoritism, while unfair, disadvantages both sexes alike for reasons other than gender.  Knadler, 2005 U.S. Dist. LEXIS 21278 at *16-*17 (internal quotation marks omitted).

10

to Judy, he brought her goodies (cookies) two or three times a week, and he let Judy and a friend have a small work station. (Id. at 69, 73.) These goodies were often for everybody, Plaintiff acknowledged, although sometimes they were just for Judy. (Id. at 73-76, 226.)

Even if the conduct Plaintiff describes is considered conduct of a sexual nature, it does not rise to the level of severe or pervasive conduct that alters the conditions of employment and creates an abusive work environment. Hugging and touching hair by itself is not objectively severe, and Plaintiff provides no evidence that it was physically threatening or humiliating to her or interfered with her work performance. Plaintiff has not pointed to any evidence that she spurned any sexual advances and was therefore denied benefits. Further, even if the Court assumed that Maples showed favoritism to Judy and others by allowing them jitney and forklift training before offering it to Plaintiff, she concedes that she does not know anything about Judy or her friend's qualifications vis-a-vis her own. (Id. at 66.) There is no evidence that anyone situated similarly to Plaintiff was treated differently.

In sum, the evidence, even viewed in Plaintiff's favor, does not raise a triable issue of fact as to Plaintiff's claim for hostile work environment based on sexual harassment.

D. Retaliation (Title VII)

Defendant also moves for summary judgment on Plaintiff's retaliation claim, arguing that Plaintiff has not established a prima facie case of retaliation. Defendant concedes that Plaintiff engaged in protected activity by filing EEO claims, but argues that Plaintiff cannot show that she suffered any adverse action. (Dkt. 72 at 24.) Defendant also asserts that Plaintiff cannot show that anyone in management knew about her EEO claims or EEO settlement, and that even if there were evidence of such knowledge, there is still no evidence of a causal link. In opposition, Plaintiff argues that issues of material fact exist as to retaliation, citing her SAC and declaration. (Dkt. 75 at 4-5.)

To make out a prima facie retaliation case, a plaintiff must prove that: (1) she engaged in a protected activity; (2) she suffered a materially adverse action; and (3) there was a causal relationship between the two. Westendorf v. W. Coast Contractors of Nev.,

11

Inc., 712 F.3d 417, 421 (9th Cir. 2013).  An employee engages in protected activity when she opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law.  See Freitag v. Ayers, 468 F.3d 528, 541 (9th Cir. 2006).  In the Title VII context, a materially adverse action exists when the challenged action well might have dissuaded a reasonable person from making or supporting a charge of discrimination, such as an undeserved poor performance rating.  Emeldi v. Univ. of Oregon, 698 F.3d 715, 726 (9th Cir. 2012) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

As to causation, the Supreme Court recently held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  Univ. of Texas S.W. Med. Ctr. v. Nassar, Case No. 12-484, 2013 U.S. LEXIS 4704, at *38 (June 24, 2013).  On summary judgment, causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision."  Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1035 (9th Cir. 2006) (quoting Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987)).  Nevertheless, a plaintiff "must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity."  Raad v. Fairbanks N. Star Borough School Dist., 323 F.3d 1185, 1197 (9th Cir. 2003).  Further, "mere speculation cannot raise an issue of fact."  Emeldi, 698 F.3d 728.

Once a plaintiff produces evidence supporting a prima facie case, the burden shifts to the defendant employer to articulate a legitimate, non-retaliatory reason for the adverse employment action.  If the employer does so, the plaintiff bears the burden of demonstrating that the reason was merely a pretext for the unlawful retaliatory motive.  See Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1066 (9th Cir. 2003).  In this step, the plaintiff "must do more than establish a prima facie case and deny the credibility of the [defendant's]

witnesses." Schuler v. Chronicle Broadcasting Co., 793 F.2d 1010, 1011 (9th Cir. 1986). Rather, he or she must offer "specific and significantly probative evidence" that the proffered reasons are pretextual. Id. A plaintiff can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

Defendant properly concedes that Plaintiff's filing of EEO claims is protected activity. Poland v. Chertoff, 494 F.3d 1174, 1180 (9th Cir. 2007). Defendant asserts, however, that several of the alleged acts of retaliation are not adverse employment actions. Plaintiff does not oppose this argument other than to point to the SAC and declaration as showing acts of retaliation.

Some of the conduct Plaintiff describes would, if supported by evidence, constitute adverse employment action. The denial of jitney or forklift training and licensing could be an adverse employment action. McAlindin v. Cty. of San Diego, 192 F.3d 1226, 1238-39 (9th Cir. 1999). Defendant concedes that assigning an employee more, or more burdensome, work responsibilities may be considered an adverse employment action, citing Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008). Further, being denied a transfer could also constitute an adverse employment action, McAlindin, 192 F.3d at 1238-39, although here it is undisputed that there was no open position to which Plaintiff could have been transferred in this case. (Maples Decl. ¶¶ 8-9.)

Whether issuing Plaintiff letters of warning and giving her a notice of suspension and later rescinding it are adverse employment actions is a closer question. Courts disagree as to whether a USPS letter of warning alone is an adverse employment action. Compare Ezell v. Potter, 400 F.3d 1041, 1049 (7th Cir. 2005); Johnson v. Potter, Case No. CV F 09-0529 LJO, 2011 U.S. Dist. LEXIS 61619, at *18 (E.D. Cal. June 9, 2011) (letter of warning that was later expunged does not continue to be adverse employment action); Morrow v. Potter, Case No. 10 C 2772, 2010 U.S. Dist. LEXIS 94926, at *4 (N.D. Ill. Sept. 10, 2010); with Delia v. Donahoe, 862 F. Supp. 2d 196, 212, 223 (E.D.N.Y. 2012); Rivers v. Potter,

13

Case No. 05-4868, 2007 U.S. Dist. LEXIS 92590, at *26 (D.N.J. Dec. 18, 2007) (finding a letter of warning to be an adverse action in a retaliation claim). The Ninth Circuit has not addressed the issue, and therefore this Court assumes without deciding that issuing Plaintiff a letter of warning was an adverse employment action. Defendant likewise cites no case law for the proposition that sending an employee a notice of suspension is not an adverse employment action where the suspension was later rescinded. The Court assumes that this also constitutes an adverse employment action.

Plaintiff has not, however, provided any evidence that these adverse employment actions were taken because of her EEO claims. The only evidence Plaintiff provides are statements in her declaration that her EEO appeals "caused things to get worse" and "she knows Roland Maples was retaliating against me for my complaints to the EEOC and to other managers at the Post Office." (Pl.'s Decl. ¶¶ 4-7.) These statements regarding causation are speculative and conclusory and do not raise a triable issue of fact. Cafasso v. Gen Dynamics C4 Sys., 637 F.3d 1047, 1061 (9th Cir. 2011). Further, Plaintiff does not know whether Maples, the only person she accuses of retaliation, knew of the 2007 settlement that led to her being rehired, and she does not point to evidence that he knew about her EEO claims. (Pl.'s Dep. at 99). Rather, she assumed he knew about it because he and other postal employees all work in the same building. (Pl.'s Dep. at 230). Maples admits that he knew of Plaintiff's EEO claims as of January 2009, but Plaintiff has not argued or shown that this knowledge was in any way related to any adverse actions. (Maples Decl. ¶ 13.)

More importantly, Plaintiff has not provided sufficient evidence to rebut Defendant's legitimate reasons for its actions. Maples avers that all mail handlers had the opportunity to receive jitney training if they requested it, and he approved Plaintiff's request when she made it. (Id. ¶ 11.) He also rotated workers between stations to avoid complaints about unequal workloads. (Id. ¶ 10.) Maples states that he issued Plaintiff a letter of warning because she refused to follow instructions to move between different operations after receiving previous warnings. (Id. ¶ 16.) He declares that he issued similar letters of

14

1  warning to similarly situated employees for failure to follow instructions and for time and
2  attendance problems. (Id. ¶ 17.) In addition, Maples avers that he did not transfer Plaintiff
3  because there was no vacancy. (Maples Decl. ¶¶ 8-9.) Plaintiff has not attempted to show
4  that these explanations were a pretext or provided any evidence that he treated similarly
5  situated employees differently. In sum, Plaintiff has not raised a triable issue as to
6  retaliation.

   E.   Disability Discrimination

Defendant also moves for summary judgment on Plaintiff's disability discrimination claim, which is brought under the Rehabilitation Act of 1973, 29 U.S.C. § 791. Defendant argues that Plaintiff cannot prove that she has a disability, that she suffered any adverse action, that any actions were motivated by her disability, or that Defendant's legitimate reasons for its actions were pretextual. Plaintiff opposes these arguments by pointing out that Plaintiff is disabled, the disability is well-documented, and that USPS personnel knew of Plaintiff's disability.[3]

To prove disability discrimination under the Rehabilitation Act, a plaintiff must show that: (1) at the time of the alleged discrimination, the plaintiff had a disability within the meaning of the Rehabilitation Act; (2) except for her disability, she was otherwise qualified for the position; and (3) she suffered an adverse employment action because of her disability. Walton v. U.S. Marshal's Serv., 492 F.3d 998, 1005 (9th Cir. 2007). The Rehabilitation Act incorporates the standards of substantive liability of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. Walton, 492 F.3d at 1005. Under the ADA, disability means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (B) a record of such an impairment, or (C) being regarded as having such an impairment." Id. The standard for causation is the "motivating factor" test, under which a plaintiff must show that any adverse employment action was motivated, even in part, by animus based on plaintiff's disability or request for

---

[3] Although it is not clear whether Plaintiff is bringing a failure to accommodate claim in addition to a disability discrimination claim, any failure to accommodate claim was not administratively exhausted, as set forth above.

15

1  accommodation. Head v. Glacier Northwest, Inc., 413 F.3d 1053, 1065 (9th Cir. 2005). If
2  Plaintiff sets out a prima facie case, the burden shifts to Defendant to demonstrate a
3  legitimate, non-discriminatory reason for the action. Lucero v. Hart, 915. F.2d 1367, 1371
4  (9th Cir. 1990).

5  Defendant's primary argument is that Plaintiff cannot establish that she is disabled
6  because there is insufficient evidence of impairment or that the impairment limits major life
7  activities. Plaintiff argues that there is an issue of fact regarding disability and cites her
8  declaration, which states that Plaintiff was in special classes from first grade to high school,
9  that her disability is well-documented, and that she was hired through the California
10 Department of Rehabilitation. (Pl.'s Decl. ¶¶ 11, 14.)

11 Whether Plaintiff has raised a triable issue of fact that she is disabled under the ADA
12 is a close question. Although Plaintiff does not point to evidence that her life was
13 substantially affected by her alleged learning disability, it is undisputed that Plaintiff was
14 hired through the California Department of Rehabilitation. (Pl.'s Dep. at 94.) There is also
15 documentary evidence from a Department of Rehabilitation counselor and a physician that
16 supports Plaintiff's claim that she has a learning disability. (Reding Decl. Ex. 9 at 147-48.)
17 Further, the ADA provides that the term "disability" is to be construed in favor of broad
18 coverage. 42 U.S.C. § 12102(4). The Court will therefore assume that Plaintiff has raised a
19 triable issue regarding whether she is disabled under the ADA.

20 Defendant makes the same arguments about adverse employment action with respect
21 to disability discrimination as it makes with respect to Plaintiff's other claims. For the
22 reasons set forth above, the Court assumes that there are triable issues regarding whether
23 some of Defendant's actions are adverse employment actions.

24 Plaintiff has not come forward, however, with sufficient evidence that these adverse
25 actions were motivated by her disability. Indeed, Plaintiff does not address causation at all
26 in her opposition brief. There is no evidence that Maples even knew about Plaintiff's
27 disability during much of the relevant time period. Plaintiff simply speculates that "[h]e
28 knew about this any way and so did everyone in management, because they know I came

16

from the Rehabilitation Department and they knew that people that came there had disabilities like mine." (Pl.'s Decl. ¶ 11.) Similarly, she states that "They knew about it, that's no doubt about it." (Id. ¶ 13.) At her deposition, however, Plaintiff stated that she did not tell Maples of her disability or that she was hired through the California Department of Rehabilitation, and she does not know whether he received a letter she sent to the postmaster about her disability. (Pl.'s Dep. at 96, 99.)

Although Maples acknowledges that he learned of Plaintiff's alleged disability in the context of an EEO claim in January 2009, Plaintiff provides no evidence that his knowledge of her disability motivated him to act against her. At most, there is evidence that Maples refused to accept Plaintiff's disability as an excuse for not following instructions when he issued her a letter of warning. (Reding Decl. Ex. 9.) This is insufficient to raise a triable issue that Maples disciplined Plaintiff because of her disability. Further, some of the alleged discriminatory acts took place before Maples knew of any alleged disability. For example, the alleged transfer denial took place in mid-2008. (Maples Decl. ¶¶ 8-10.)

Finally, as with retaliation, Defendant has articulated legitimate, non-discriminatory reasons for its actions. Plaintiff has not raised a triable issue that these reasons were merely a pretext or even addressed the issue.

**IV. Conclusion**

The Court grants Defendant's motion for summary judgment.

Dated: June 27, 2013

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge